## Lamereaux et al. v. Dixie Motor Co.
### Lamereaux v. Same.

(Decided March 3, 1936.)

68

C. R. LUKER for appellants.

J. B. WALL and R. C. LEWIS for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

The first-entitled action is on a return of nulla bona; the second is to set aside the judgment rendered in the first.

The Dixie Motor Company, after the rendition of a judgment for $419.20, interest and costs, in its favor on C. S. Lamereaux's note dated the 8th day of June, 1931, filed an action against him in the Laurel circuit court to set aside a mortgage on real estate executed and delivered by Susan E. Johnson to Mrs. C. S. Lamereaux on the 26th day of September, 1930, for $800. It is charged in the petition that Mrs. Lamereaux "furnished no part of the consideration and that the mortgage was taken in her name for the sole and only purpose of cheating, hindering and delaying the creditors of C. S. Lamereaux," and that she held the mortgage in trust for her husband and not otherwise. It sought a general order of attachment against the property of C. S. Lamereaux and Mrs. C. S. Lamereaux. The attachment was returned executed by delivering a copy to C. S. Lamereaux and Mrs. C. S. Lamereaux on August 3, 1932. Mrs. Lamereaux filed an answer controverting the petition. The evidence was taken on this issue. The testimony of Mrs. Lamereaux and her nephew discloses that she received from her father's estate more than $2,700; invested a large portion of it in real estate, taking the deed in her name, which was later sold and the proceeds received by her; that she had kept the ownership and possession of her propery separate from that of her husband, occasionally loaning or paying out for him different sums. Her and his testimony establishes that several years ago she loaned him about $1,600, which he invested in a stock of groceries, and thereafter he owned and conducted the grocery store; that on January 12, 1922, he executed and delivered her a mortgage on the stock of groceries to secure her in the payment of the money which she had previously loaned and paid out for him. It was filed for record on November 11, 1931. After

he invested in groceries the money which he borrowed of her, he engaged in drilling oil, gas, and water wells, she superintending the grocery store, in the name of Lamereaux & Co. She handled the grocery store as if she were the owner, yet he owned it. At the date of the execution and delivery to her of the Johnson mortgage, she loaned to Mrs. Johnson $800 of her own money, accepted the mortgage to secure it and had it recorded, nearly one year before her husband became indebted to the Dixie Motor Company, as evidenced by his note.

On December 18, 1933, the Dixie Motor Company filed an amendment to its petition wherein it charged that C. S. Lamereaux had transferred and assigned to his wife the stock of groceries of the value of $600 or more and other property, the value of which was unknown to it, and that such transfers were without consideration, made for the fraudulent purpose of preventing it collecting its debt against C. S. Lamereaux; that Mrs. Lamereaux had converted the merchandise and personal property so transferred to her to her own use, and that it was "not available to the orders and processes of the court"; that "the merchandise had been so intermingled with other merchandise that it cannot now be reached by the court"; "that it can hardly be ascertained which one did really own any certain parts of their said property and that all of which was done for the purpose of cheating, hindering and delaying the creditors of C. S. Lamereaux and especially the plaintiff."

The amended petition was controverted by an answer. The court in its judgment declared "that for several years they (C. S. Lamereaux and Mrs. C. S. Lamereaux) have mingled and commingled their property until it would now be almost impossible to say what property, if any, either owns as against the other or independent of the other, no doubt at some time Mrs. Lamereaux owned some property independent of her husband, but their own testimony shows that this property, during the several years next before the beginning of this action, has been mingled and so used that it is now impossible to separate one property from the other. The store which they now own and operated belongs to no one can tell from their own testimony. * * * On account of this situation it is the opinion and finding of this court that the plaintiff is en-

titled to have paid out of the proceeds of the sale of the land described in the pleadings his debt with interest and costs." The attachment was sustained, although it was not levied on any property. Later, she filed a petition attacking the validity of this judgment. She assailed it on the ground it was rendered after the regular term of the court had ended, without notice to her or her counsel and without any agreement on her part or that of her counsel.

Her application to set aside the original judgment was dismissed. She appeals therefrom and from the original judgment.

On the 30th day of the regular October term on November 18, 1933, the court entered an order extending the term to and including the 23rd day of December, 1933, "for the trial of any and all listed causes and for the transaction of any other business that may come before the court."

On the 55th day of the October term, or December 18, 1933, an order was entered adjourning court. On December 30, 1933, the judgment which she seeks to have invalidated was rendered.

Considering the issues made in the original action, the pleadings admit that the Johnson mortgage antedated, by almost a year, the creation of the debt of C. S. Lamereaux to the Dixie Motor Company.

The evidence without contradiction shows that Mrs. Lamereaux was the owner of the money which she loaned to Mrs. Johnson at the time the Johnson mortgage was executed and delivered to her for same. There is no proof of fraud in her loaning the money and accepting the Johnson mortgage to secure the loan. The only ground on which the attack on its validity is based is that it is void under section 1907, Kentucky Statutes.

"That statute does not apply to conveyances executed by a debtor prior to the creation of the debt sued on, it follows that such deeds as were executed before the date of the note, * * * must, for the purposes of this case, be upheld. A fortiori, the deeds executed prior to the date of the note for a valuable consideration must be held valid." Cornett v. Brashear, 225 Ky. 529, 530, 9 S. W. (2d) 302, 304.

This rule precludes the Dixie Motor Company of

its right to assail and set aside the Johnson mortgage as against either or both Mr. and Mrs. C. S. Lamereaux. As to the mortgage of Mrs. Lamereaux on the stock of groceries, a different rule applies. It was recorded subsequent to the creation of the debt of the Dixie Motor Company. The proof is positive that there was a valuable consideration for her husband's mortgage to her on the stock of groceries. The debt of the Dixie Motor Company and of Mrs. Lamereaux against C. S. Lamereaux existed at the time the mortgage on the stock of groceries was executed and delivered to her. Plainly, it was preferential within section 1910, Kentucky Statutes. But in its petition as amended the Dixie Motor Company only seeks to set aside the mortgage on the stock of groceries on the ground it was actually or constructively fraudulent within sections 1906 and 1907, Kentucky Statutes. It nowhere alleges grounds to set aside a preferential conveyance under section 1910. Since no facts in support thereof were alleged in its pleadings, it is entitled to no relief under section 1910. Farmers' Bank & Trust Co. v. Peters et al., 226 Ky. 403, 11 S. W. (2d) 103; Joyeux et al v. Anderson-Dulin-Varnell Co. et al., 213 Ky. 658, 281 S. W. 796; Grand Lodge of Kentucky et al. v. First National Bank of Kentucky et al., 251 Ky. 189, 64 S. W. (2d) 474.

The mortgage of Lamereaux to his wife, though he was insolvent, was for a valuable consideration, therefore it was not fraudulent within the purview of section 1907. To avail itself of section 1906, it was necessary to establish by facts and circumstances that Lamereaux executed the mortgage with a fraudlent intent at the time she accepted the mortgage. Campbell v. First National Bank of Barbourville, 234 Ky. 697, 27 S.W.(2d) 975.

Even if the evidence be regarded as sufficient to bring within this rule the mortgage on the stock of groceries, which we do not decide, such was not sufficient to authorize the decree of the court annulling the Johnson mortgage to Mrs. Lamereaux and directing the Dixie Motor Company's debt, interest, and costs paid out of its proceeds. There is no evidence of commingling funds within the legal meaning of this term.

The evidence fairly establishes that the judgment in the original action was entered after the statutory term of the court had expired and after the date to

;which it had been extended by an appropriate order entered at the regular term, without notice and with-out agreement as required by section 964b-1, Carroll's Kentucky Statutes (Baldwin's Supp. to 1933). The application for the new trial may consistently be re-garded as a motion to set aside the judgment as void. Section 763, Civil Code of Practice; First State Bank of Elkhorn City v. Thacker's Adm'x et al., 215 Ky. 186, 284 S. W. 1020; Sections 971-12 and 971-13, Ky. Stats. Supp. 1933. We regard the judgment void, since it was entered without notice and without an agreement, though the court attempted to render it in virtue of section 964b-1. It follows that the court erred in not setting it aside.

Since the original judgment herein is void, it is reversed, with directions to try the case consistently with this opinion.