## Hagemeyer et al. v. First Nat. Bank & Trust Co. et al.

March 5, 1948.

Joseph P. Goodenough, Judge.

Helm Woodward for appellants.

Orie S. Ware for appellees.

OPINION OF THE COURT BY CLAY, COMMISSIONER—
Affirming.

This suit was brought by appellee, the vendor, to obtain a declaration of rights and specific performance of a real estate sale contract. Both parties are willing and able to consummate the transaction, but a controversy has arisen over the vendor's title. The Chancellor adjudged that the contract be performed.

The vendor (hereinafter referred to as "Bank") was vested with title and full power to convey the property, as trustee, by virtue of a trust agreement and a conveyance executed in 1935 by the owner, one Walter C. Riedlin. The only issue in the case is whether or not Riedlin had sufficient mental capacity to create this trust for his own benefit.

In February 1934, Riedlin reached his majority and inherited a very substantial estate from his grandfather. Soon thereafter his sister petitioned for an inquest to determine his mental competency. After a hearing, the jury was unable to reach a verdict. Approximately a month later similar proceedings were again commenced, and a second jury could not agree.

In February 1935, another inquest was initiated by the sister, and she also filed an action seeking to enjoin her brother and others from disposing of his property. These last two actions were consolidated. Before the case was tried on its merits, Riedlin voluntarily proposed to make a deed of trust of all his property to the Bank. A trust agreement was drawn up, approved by the Court, and executed by him in November 1935. Approximately two months later Riedlin and his wife conveyed to the trustee the real estate involved.

It is undisputed that the Bank has full power to make a valid conveyance if the trust agreement is upheld. The parties have acted under this trust for twelve years, and Riedlin does not contest its validity. It has proven eminently beneficial to him.

The evidence indicates that Riedlin had spent a rather erratic youth. While still a minor he was in the Cincinnati Sanitarium for several years. His condition was considered a "mental deficiency or failure of the mind to develop normally." It was a form of "mental retardation." He was physically energetic, but was subject to spells of depression, excitement, and irrationality. From time to time he expressed a desire to enter numerous business and professional enterprises. He wanted to take trips to unusual places. On occasion he was violent, but his actions seem to have been those of a frustrated child rather than those of a maniac. The doctors who had him under observation at the Sanitarium were of the opinion at the inquest hearings that he was not mentally competent to handle his estate.

After the proceedings which led to the trust agreement had been filed, the Court appointed three eminent physicians to examine Riedlin. They found that during the period of observation by them he showed remarkable improvement, and concluded that the various attacks upon his competency had aggravated his mental illness. They were of the opinion that "up to a certain limit" he had "mental capacity to manage his estate."

In a case of this sort the following principles are important: (1) A contract executed by one who is actually of unsound mind is not void but only voidable (Dowell &c. v. Dowell's Adm'r, &c., 137 Ky. 167, 125 S. W. 283); (2) mental weakness alone does not justify the annulment of a contract or deed if it is not such an infirmity as to destroy the party's power to act voluntarily and to appraise the consequences of his act (Gillock v. Williams et al., 199 Ky. 169, 250 S. W. 836); (3) courts will hesitate to upset a transaction which is entered into in good faith and where no undue advantage or fraud is shown (Cummins' Adm'r v. Walker's Committee, 252 Ky. 5, 66 S. W. 2d 48); and (4) the true test is the person's capacity to understand and assent to the particular transaction in question (Collins et al. v. Isaacs, 231 Ky. 377, 21 S. W. 2d 484).

The Chancellor, in applying the above principles, wrote an excellent opinion in this case and decided that Riedlin was mentally capable of entering into the trust agreement. After careful review of all the evidence, we

are convinced that the Chancellor was correct in his conclusion. It follows, therefore, that the Bank had good title to the property involved, with full power to convey it in accordance with the terms of the sale contract.

The judgment is affirmed.