RENDERED:  JULY 8, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0460-MR

KATHY FLETCHER                                                APPELLANT

v.          APPEAL FROM MARTIN CIRCUIT COURT
            HONORABLE JOHN DAVID PRESTON, JUDGE
            ACTION NO. 20-CI-00139

DELILAH FLETCHER, BY AND
THROUGH HER POWER OF
ATTORNEY, REBECCA FLETCHER                                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; ACREE AND TAYLOR, JUDGES.

CLAYTON, CHIEF JUDGE:  Kathy Fletcher ("Kathy") appeals from the Martin

Circuit Court's findings of fact, conclusions of law, and judgment setting aside a

deed of conveyance.  Upon review of the record and applicable law, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This case involves a dispute over a purported deed of conveyance for a property named "Crum Branch" in Martin County, Kentucky. Delilah Fletcher ("Delilah"), Delilah's daughter and power of attorney Rebecca Fletcher ("Rebecca"), and Kathy resided at Crum Branch for several years.

In June 2020, Kathy sent an eviction letter and instituted an eviction proceeding against Delilah. Kathy based the eviction action on a deed from June 2008 that purported to transfer the property ownership from Delilah to Kathy and Kathy's husband, Daniel Fletcher ("Daniel"). Daniel was Delilah's son who had passed away in March 2020.

On the deed, in lieu of Delilah's signature, there is an "X." Next to the "X," there are two witnesses' signatures: Tonya Mills and Carol Mills. Carol Mills was also the Martin County Clerk. Daniel and Kathy signed the deed as well. Additionally, the signatures were notarized by Lori Wheeler. The deed was recorded with the Martin County Clerk.

In addition, Kathy alleged that Rebecca and Delilah had signed a lease for Kathy to reside on the property in 2012 and provided a copy of the handwritten lease.

Delilah and Rebecca, as Delilah's power of attorney (the "Appellees"), filed a verified complaint in the circuit court. The complaint alleged

that Delilah could neither read nor write, had not signed the purported deed, that the deed was "a fraud," and requested that the deed be set aside in its entirety.

On September 8, 2020, Kathy subsequently filed a *pro se* response to the verified complaint. The response did not raise the defense of the statute of frauds. Additionally, Kathy's acting power of attorney at the time, Philip Dohm, filed a motion to dismiss the complaint based on the statute of limitations and the argument that fraud was not pled with sufficient particularity. The circuit court never ruled on the motion.

Moreover, Appellees made a motion to amend the complaint to also seek an adjudication of the parties' property interests should the circuit court declare the deed to be valid. The circuit court sustained the motion.

Thereafter, the circuit court held a bench trial in March 2021. Counsel introduced Delilah's depositions from December 2020 and January 2021. She stated that she had no formal education and had never learned to read or write. She further testified that she had no recollection of making a deed in 2008 transferring ownership of Crum Branch to Daniel and Kathy. Delilah was also asked to look at the "X" on the deed in question and testified that she had not made the marking. Finally, she testified that she never had any intention to deed Crum Branch to Daniel and that she had never signed a lease in 2012.

Additionally, Rebecca testified at the trial. Rebecca testified that Delilah did not sign the deed in question. Further, Rebecca denied signing a lease on the property in 2012 while also stating that it appeared to be her signature on the lease. However, according to the lease and the testimony at trial the lease does not identify any specific property. The record also reflects that in Kathy's forcible detainer complaint she filed in order to evict Delilah and Rebecca, that there was no lease, and it was a tenancy at will.

Kathy testified that she, Daniel, and an attorney – Christy Grayson – saw Delilah sign the deed. On cross-examination, Kathy admitted that the notary public who notarized the deed and the witnesses on the deed were not present in court. The circuit court denied a motion for the notary public Lori Wheeler to testify telephonically.

The court found that Delilah's and Kathy's testimonies were in direct conflict. Because Kathy did not provide any testimony from Christy Grayson, Lori Wheeler, or Carol Mills – all of whom could have provided evidence to verify Delilah's signature on the deed – the circuit court found that Delilah did not sign the deed of conveyance. Thus, the circuit court held that it would set aside the deed because Delilah did not sign the deed. This appeal followed.

We will discuss further facts as they become relevant herein.

## ANALYSIS

### a.  Standard of Review

A trial court's findings of fact in an action tried without a jury "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."  Kentucky Rule of Civil Procedure ("CR") 52.01.  "Findings of fact are not clearly erroneous if supported by substantial evidence." *Weinberg v. Gharai*, 338 S.W.3d 307, 312 (Ky. App. 2011).  As stated by a panel of this Court, "[s]ubstantial evidence is that evidence which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the minds of reasonable people." *Id*. (citation omitted).  Additionally, "[w]ith respect to the trial court's application of the law to those facts, we will engage in a *de novo* review." *Id*. (citation omitted).

On evidentiary issues, "[t]he balancing of the probative value of such evidence against the danger of undue prejudice is a task properly reserved for the sound discretion of the trial judge." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citation omitted).  "The standard of review is whether there has been an abuse of that discretion." *Id.*  The abuse of discretion test is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Id*.

### b.  Analysis

Kathy raises three issues on appeal:  (1) the statute of limitations barred the action and therefore the court should have dismissed the case; (2) Appellees failed to establish that the subject deed was procured by fraud; and (3) the court committed reversible error by not permitting Kathy's witness to testify by video conference.

As a preliminary matter, Appellees argue that Kathy's brief does not contain a statement as to how she had preserved her arguments for appellate review, and thus should be stricken.  CR 76.12(4)(c)(v) requires "a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner."  Here, Kathy's brief has no statement of preservation of the issues she raises on appeal.  CR 76.12(4)(c)(v).

Our options when an appellate advocate fails to abide by this rule are: "(1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions . . . ; or (3) to review the issues raised in the brief for manifest injustice only[.]" *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010) (citations omitted).  In this case, the shortcomings in Kathy's brief do not warrant striking her brief or reviewing the appeal solely for manifest injustice.  Thus, we have elected not to impose the more severe options permitted under *Hallis* and CR 76.12 and will proceed with a review of the matter.

Kathy first argues that the statute of limitations under Kentucky Revised Statutes ("KRS") 413.120(11) and KRS 413.130(3) barred Appellees' action in this case. KRS 413.120(11) states that "[a]n action for relief or damages on the ground of fraud or mistake" shall be commenced within five (5) years after the cause of action accrued. Additionally, KRS 413.130(3) states that, regardless of when the cause of action accrued, "the action shall be commenced within ten (10) years after the time of making the contract or the perpetration of the fraud." Thus, because Appellees did not commence their action until September 3, 2020, which is more than ten years after the June 2008 deed, Kathy argues that their action was untimely.

However, in this case, the court did not find that Kathy had perpetrated a fraud but rather that Delilah did not sign the deed. Thus, the court's findings have much more in common with a finding of forgery than fraud. "Forgery is the false making or material alteration with intent to defraud of any writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability." *Lincoln Bldg. & Loan Ass'n v. Cohen*, 292 Ky. 234, 238, 165 S.W.2d 957, 960 (1942) (citation omitted). Here, the court found that Delilah did not sign the deed, which would mean that the deed had been "materially altered" with a presumed "intent to defraud." In turn, had the deed been genuine, it would "be of legal efficacy or the foundation of a legal liability."

Statutes of limitations apply to deeds procured through fraud or duress because they are merely voidable. *See Hagemeyer v. First Nat. Bank & Trust Co.*, 306 Ky. 774, 776, 209 S.W.2d 320, 321 (1948) and *Skaggs v. Vaughn*, 550 S.W.2d 574 (Ky. App. 1977). However, Kentucky courts have consistently held that "a forged deed is absolutely void, and is ineffectual for any purpose." *Lowther Oil & Gas Co. v. McGuire*, 189 Ky. 681, 684, 225 S.W. 718, 719 (1920). "[A] claim of title under a void deed, although recorded, [will not] ripen into a fee by lapse of time, nor will limitations run against the owner of record in favor of a claimant not in possession[.]" *Kypadel Coal & Lumber Co. v. Millard*, 165 Ky. 432, 443, 177 S.W. 270, 275 (1915). Moreover, "[a] mere claim of title, even of record, unaccompanied by an adverse holding, will not start the statute." *Id*. at 443-44, 177 S.W. at 275.

In this case, because Appellees could prove to the circuit court's satisfaction that Delilah had not signed the deed, then the deed was void. Because the deed is void, Delilah would not have had to assert her interest in the property within any time period. A forged deed does not become valid simply by the passing of time. *Millard*, 165 Ky. at 443, 177 S.W. at 275. Finally, although Appellees did not raise the argument that the deed was void due to forgery, we "may affirm a lower court for any reason supported by the record." *McCloud v. Commonwealth*, 286 S.W.3d 780, 786 n.19 (Ky. 2009) (citation omitted).

Kathy next argues that the court failed to establish that the subject deed was procured by fraud. "In a Kentucky action for fraud, the party claiming harm must establish six elements of fraud by clear and convincing evidence[.]" *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999). The elements are "a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury." *Id.* Kathy argues that the court committed reversible error in ruling for Appellees due to a failure to cite and apply the elements necessary to establish fraud.

However, as previously discussed, Kentucky courts have previously held that a forged deed is void if it is proven to the court's satisfaction that the deed of conveyance was, in fact, a forgery. *Cohen*, 292 Ky. at 238, 165 S.W.2d at 960. Thus, the court was not required to go into a detailed analysis of the fraud elements.

Finally, Kathy argues that the court erred in denying the motion for notary public Lori Wheeler to testify via Zoom. However, Kathy did not properly preserve this issue, as she accepted it during the trial without argument. Kentucky Rules of Evidence 103(a)(2) states that an error may not be predicated upon a ruling which excludes evidence unless an offer of proof where the substance of the evidence was made known to the court was offered or was apparent from the

context. In this case, the motion was merely raised at the beginning of the defense's case-in-chief, was denied, and immediately accepted by Kathy.

Moreover, even if Kathy had properly preserved the issue, we would still affirm the trial court's ruling. The circuit court's denial of the motion for a witness to appear telephonically was a ruling on the admissibility of evidence. We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *English*, 993 S.W.2d at 945. For the court to have abused its discretion, it had to have been arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Id*. Without some flagrant miscarriage of justice an appellate court will respect a trial court's exercise of discretion in these circumstances. *Gross v. Commonwealth*, 648 S.W.2d 853 (Ky. 1983). Here, Kathy provided no evidence that denying a witness the ability to testify telephonically was a flagrant miscarriage of justice.

For the foregoing reasons, the Martin Circuit Court's judgment is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Stephen G. Hopkins
Hardinsburg, Kentucky

BRIEF FOR APPELLEE:

Brian Cumbo
Inez, Kentucky